D. Maimon Kirschenbaum
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
45 Broadway, Suite 320
New York, NY 10006
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Named Plaintiff, proposed FLSA
Collective Plaintiffs, and proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

| | |
|---|---|
| **PHUNTSOK DHONDUP, on behalf of himself and others similarly situated,** | **CASE NO. 1:26-cv-6049** |
| **Plaintiff,** | **COMPLAINT** |
| v. | **FLSA COLLECTIVE ACTION AND FRCP 23 CLASS ACTION** |
| **NORIGAMI INC., d/b/a SHIROKURO, PUBLIC MARKET, INC., JAMES LIM, and YOHAN SHIM,** | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

-------------------------------------------------------x

Plaintiff, on behalf of himself and all others similarly situated, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3. Defendant Noragami Inc., d/b/a Shirokuro ("Shirokuro") is a New York corporation that owns and operates the restaurant known as Shirokuro (the "Restaurant") located at 103 Second Ave, New York, New York 10003.

4. Shirokuro has an annual gross volume of sales in excess of $500,000.

5. Shirokuro has employees engaged in interstate commerce and handling, selling, or otherwise working on goods and materials that have been moved in or produced for interstate commerce.

6. Defendant Public Market Inc., ("Defendant Public Market") is a New York Corporation that processes payroll for the Restaurant's employees, including Plaintiff. Defendant Public Market's principal place of business and address is 103 Second Ave, New York, New York 10003 – the same address as the Restaurant.

7. Defendant Public Market issues Plaintiff handwritten paychecks which are signed by Defendant James Lim.

8. Defendants Public Market and Shirokuro constitute a single integrated employer and/or joint employer of Plaintiff and other individuals who work at the Restaurant.

9. Defendant James Lim is an active co-owner of Shirokuro and actively manages the Restaurant. Defendant James Lim has authority to hire, fire, and set the rate of pay and the terms of employment for the employees at the Restaurant, including Plaintiff. Defendant James Lim is regularly present at the Restaurant and makes day-to-day decisions the effects personnel and payroll. Defendant James Lim implemented the illegal tip and wage theft practices set forth herein.

10. Defendant Yohan Shim is an active co-owner of Shirokuro and actively manages the Restaurant. Defendant Yohan Shim has the authority to hire, fire, set the rates of pay, set the

schedules, direct employees, discipline employees, and set the terms of employment for employees at the Restaurant, including Plaintiff. Defendant Yohan Shim is regularly present at the Restaurant and makes day-to-day decisions when Defendant Jams Lim is not present.

11.    Upon information and belief Defendant James Lim and Defendant Yohan Shim own Defendant Public Market.

12.    Plaintiff Phuntsok Dhondup ("Plaintiff") works for Defendants at the Restaurant as a server from January 2026 through the present.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.    Plaintiff brings the First Claim for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all employees employed by Defendants as service employees on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules of retaining employees' tips.  The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

15.    The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purpose of notice and other purposes related to this action, their names and contact information are readily available from the Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail, email, and text message to the last address, email address, and phone number known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16.     Plaintiff brings the state law wage and hour Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all service employees employed by Defendants on or after the date that is six years before the filing of this Complaint (the "Class Period").

17.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

18.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

19.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage compensation, failing to pay the spread of hours premium, misappropriating tips, and failing to provide required wage notices/statement. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class member.  Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

20.	Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21.	A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not

parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

23.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiff and the Class members within the   meaning of the New York law.

b.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work.

c.    Whether Defendants paid Plaintiff and the Class members the applicable minimum wage for all hours worked.

d.    Whether Defendants unlawfully diverted tips from the tip pool to Defendants and/or managers.

e.    Whether Defendants paid Plaintiffs and Class members the spread of hours premium for all shifts in which the starting and ending times were over 10 hours apart.

f.    Whether Defendants provided Plaintiffs and Class members with the proper wage notices and wage statements.

## FACTS

### Wage and Hour Facts

24.     Plaintiff's Consent to Sue form is attached as Exhibit A.

25.     Plaintiff worked as a server for Defendants at the Restaurant from January 2026 through the present.

26.     Defendants paid Plaintiff an hourly wage and tips.

27.     Defendants paid Plaintiff at an hourly rate below the New York Minimum Wage.

28.     In January and February 2026, Defendants paid Plaintiff $11.00 per hour, which was below the applicable minimum wage and tip credit minimum wage rates.

29.     Beginning on February 22, 2026, Defendants began paying Plaintiff $11.35 per hour, which is the current tipped credit minimum wage.

30.     However, Defendants were not entitled to pay Plaintiff below the minimum wage and pursuant to tip credit because Defendants did not give Plaintiff written notice of the tip credit.

31.     In addition, Defendants did not pay Plaintiff for all of the hours that he worked.

32.     Plaintiff clocked in and out for his shifts, but Plaintiff was not paid for all of the time that he was clocked in and working at the Restaurant. Notably, Defendants often failed to pay Plaintiff his tips and hourly wages for full days of work.

33.     For example, Plaintiff worked on June 26, 2026, but Defendants did not include Plaintiff's hourly pay or tips from that day on his subsequent paycheck on July 4. To date, Plaintiff has still not received his pay for his work on June 26.

34.     At times, Plaintiff worked shifts where his first clock in and final clock out times were more than 10 hours apart. Defendants never paid Plaintiff the spread of hours premium he is owed for those shifts.

35.     For example, on most double shifts, Plaintiff's shift starts at 11:30am and lasts past 9:30pm. That is, on most double shifts, Plaintiff works a spread of hours that is more than 10 hours.

36.     Plaintiff and the other servers were required to pool all of the tips collected at the Restaurant and split them among themselves and the Sushi Chefs (who provided customer service).

37.     However, Defendants stole tips directly from the tip pool and diverted other tips to managers at the Restaurant.

38.     For example, from at least January 2026-March 2026, the general manager of the Restaurant was Stanley Park. Mr. Park was paid tips from the pool.

39.     In addition, the tip pool as bifurcated between tips collected at the Sushi Bar (where customers interacted with Sushi Chefs) and the regular tables in the Restaurant (where customers did not interact with Sushi Chefs). For tips collected at the Sushi Bar, Defendants split the tips 50/50 between the servers and the Sushi Chefs. For the tips collected at the regular tables, Defendants claimed that 10% of those tips were distributed to the Sushi Chefs. However, the sushi chefs did not receive the tips from the tips collected from the regular tables in the Restaurant. In reality, Defendants kept that 10% of tips for themselves.

40.     Defendants also stole tips from Plaintiff by simply not paying Plaintiff his share of the tip pool on certain days he worked. For example, Plaintiff worked on June 26, 2026, and he was marked down on the end of day report as earning $206.80 from the tip pool that day. However, Defendants never actually paid those tips to Plaintiff.

41.     Plaintiff did not receive upon hire a proper notice and acknowledgment of pay rate as required by New York law.

42.     Had Plaintiff been provided the correct and applicable minimum wage rate and tip credit information that was in effect in 2026 in a written wage notice, Plaintiff would have been

aware that he was being paid below tip credit minimum wage in January and February 2026, and he would have asserted his rights under the NYLL at an earlier time.

43.    In addition, because Defendants did not provide Plaintiff with a proper written wage notice, Defendants' use of a tip credit was an underpayment of wages.  In other words, Defendants' violation of the New York Labor Law's wage notice requirement resulted in Plaintiff being paid less than he was entitled to.

44.    Plaintiff received paystubs from Defendants which did not accurately state his hours worked.

45.    Because Defendants paid Plaintiff for the number of hours listed on his paystubs, the inaccuracies on his paystubs caused him to be underpaid.  In addition, had the paystubs stated the correct amount of actual hours he worked and he continued to be underpaid, Plaintiff would have been more effective when he complained about his underpayments.

46.    That is, Plaintiff's ability to advocate for himself and show that he was not paid the correct amount for all of the time that he worked is harmed by Defendants' failure to provide wage statements that accurately reflect his hours worked.

47.    In addition, Plaintiff's pay stubs did not state 1) the name of his employer, 2) the employer's address and contact information, and 3) that Plaintiff was being paid pursuant to a tip credit (i.e., the allowances that Defendants claimed from the minimum wage).

48.    Defendants committed the foregoing acts against Plaintiff, the FLSA Collective Plaintiffs, and the Class Members.

**Retaliation Facts**

49.     On April 10, 2026, Plaintiff complained to Defendant James Lim about not being paid for all hours he worked and about Defendants diverting the 10% of table tips to the house, among other issues.

50.     Defendant James Lim responded by accusing Plaintiff of "causing trouble" and told him that "nobody ever complained about tips before you."

51.     Defendants immediately retaliated against Plaintiff by reducing his work schedule. Before Plaintiff complained, Plaintiff normally worked 5 days a week. On April 19, Defendants reduced Plaintiff's work schedule to 4 days a week.

52.     As Defendants continued to not pay Plaintiff all of the tips or hourly wages he was owed, Plaintiff continued to complain to Defendants about it.

53.     Defendant James Lim would obfuscate and tell Plaintiff he was "too busy" to deal with the issues.

54.     Defendants continued to retaliate against Plaintiff, eventually reducing Plaintiff's work schedule to 3 days. This has put an enormous financial strain on Plaintiff who is having an extremely difficult time in paying his bills on this retaliatory and illegal reduced schedule.

55.     Defendant James Lim also spoke with Plaintiff's co-workers, telling them that Plaintiff is a troublemaker and that he is hurting the Restaurant with his complaints. Defendant Jame Lim told Plaintiff's co-workers that if Plaintiff asserts his rights in a lawsuit that Defendants will counter sue him and that he will make Plaintiff's life difficult.

56.     Defendants continue to retaliate against Plaintiff by reducing his schedule further.

57.     Plaintiff was only scheduled for two shifts – one lunch and one dinner shift – for the week of July 12, 2026.

58.     In addition to the payment issues, Plaintiff also complained to Defendants about health and safety violations at the Restaurant.

59.     Specifically, in the front of house group chat, which included managers, on April 17, 2026, Plaintiff requested that Defendant James Lim review health and safety practices at the Restaurant and ensure compliance with NYC health regulations because there were significant issues at the Restaurant that caused the Restaurant operations to fall below the standards required by NYC regulations.

60.     On April 18, 2026, Plaintiff complained to Defendant James Lim about the Restaurant's failure to comply with health and safety regulations, including failing to display the appropriate health grade certificate to customers, displaying all required health and safety notices, and explicit sanitation concerns, including, but not limited to, the Restaurant 1) storing raw chicken in open vessels next to piles of garbage, 2) serving beverage ice that came from an ice machine that was infested by bugs, and 3) failing to fix a leaking pipe in the kitchen, which dripped brown and infected water into food storage areas.

61.     On April 18, 2026, after Plaintiff complained, Defendant Yohan Shims cornered Plaintiff in the back of the kitchen, blocking his exit and verbally berated Plaintiff, repeatedly asking Plaintiff, "what the fuck did you do??" and saying that because of Plaintiff's complaints there was now "so much work to do."

62.     Plaintiff told Defendant Yohan Shims that he just requested that management address health and safety concerns and comply with applicable regulations.

63.     Defendant Yohan Shim's conduct was intimidating, aggressive and threatening. These actions were designed to harass Plaintiff and dissuade him from raising future concerns about health and safety at the Restaurant.

64. All the retaliatory actions described above (i.e., reduction in work schedule, harassment, and co-worker intimidation) were done in retaliation for Plaintiff's complaints about the Restaurant's violations of health and safety regulations and complaints about not being paid correctly.

65. Defendants' actions are unethical, disgusting, and illegal.

## FIRST CLAIM FOR RELIEF
### FLSA Tip Retention, 29 U.S.C. § 203(m)
**(Brought by Plaintiff on Behalf of Himself and the FLSA Collective Members)**

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

67. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

68. At all relevant times, Defendants have employed, "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

69. During the statute of limitations period covered by these claims, Defendants knowingly retained a portion of Plaintiff's and the FLSA Collective Plaintiffs' tips.

70. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective retained gratuities, liquidated damages as provided by the FLSA, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### New York Minimum Wage Violations,
### N.Y. Lab. L. §§ 650 *et seq.*, 12 NYCRR §§ 146-1.3, 2.2
**(Brought by Plaintiff on behalf of himself and the NYLL Class)**

71. Plaintiff realleges and incorporates by reference all previous paragraphs.

12

72.     Defendants knowingly paid Plaintiff and Class Members less than the New York State minimum wage for all hours worked.

73.     As a result of Defendant's unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### THIRD CLAIM FOR RELIEF
**Illegal Deductions from Gratuities, N.Y. Lab. L. § 196-d and 198-b**
**(Brought By Plaintiff on Behalf of Himself and the Class)**

74.     Plaintiff realleges and incorporates by reference all previous paragraphs

75.     Throughout the statute of limitations period covered by these claims, Defendants knowingly and willfully retained/misappropriated gratuities belonging to Plaintiff and the Class members.

76.     Plaintiff, on behalf of himself and the Class members, seek damages in the amount of their respective unpaid gratuities, liquidated damages as provided by the NYLL, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
**Spread of Hours, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6**
**(Brought by Plaintiff on Behalf of Himself and the Class)**

77.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

78.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

79.     Defendants did not pay Plaintiff and members of the Class New York's spread of hours premium when their workdays lasted longer than 10 hours.

13

80. As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### New York Notice/Statement Requirements, N.Y. Lab. L. §§ 195, 198
### (Brought by Plaintiff on behalf of Himself and the NYLL Class)

81. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

82. Defendant did not provide Plaintiff and Class Members with the wage notices/statements required by N.Y. Lab. Law § 195.

83. As a result of Defendant's unlawful conduct, Plaintiff and the Class Members are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, post-judgment interest, and costs and attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### FLSA Retaliation – 29 U.S.C. § 215
### (Brought by Plaintiff on Behalf of Himself)

84. Plaintiff incorporates and realleges each preceding paragraph as though set forth in full herein.

85. Defendants willfully and unlawfully retaliated against Plaintiff for his engagement in protected activities, namely his complaint regarding Defendants' unlawful pay practices.

86. In retaliating against Plaintiff, Defendants knowingly acted in deliberate disregard of Plaintiffs' rights.

87. As a result of Defendants' unlawful conduct, Plaintiff is entitled to damages in an amount to be determined at trial, including compensatory damages for monetary damages and emotional distress, liquidated damages, punitive damages, front pay, attorneys' fees, costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**
**NYLL Retaliation, N.Y. Lab. L. §§ 215, 740**
**(Brought by Plaintiff on Behalf of Himself)**

88.     Plaintiff incorporates and realleges each preceding paragraph as though set forth in full herein.

89.     Defendants willfully and unlawfully retaliated against Plaintiff for his engagement in protected activities, namely his complaints regarding Defendants' unlawful pay practices and health code violations at the Restaurant.

90.     In retaliating against Plaintiff, Defendants knowingly acted in deliberate disregard of Plaintiffs' rights.

91.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to damages in an amount to be determined at trial, including compensatory damages for monetary damages and emotional distress, liquidated damages, punitive damages, front pay, attorneys' fees, costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective Plaintiffs, and the Class, prays for relief as follows:

A.      Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

15

B.      Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

C.      Designation of this action as a class action pursuant to F.R.C.P. 23.

D.      Designation of Plaintiff as Representative of the Class.

E.      An award of damages, according to proof, including liquidated damages, to be paid by Defendant;

F.      Penalties available under applicable laws;

G.      Costs of action incurred herein, including expert fees;

H.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. §§ 198, 663 and other applicable statutes;

I.      Pre-judgment and post-judgment interest, as provided by law; and

J.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: July 16, 2026           Respectfully submitted,
       New York, NY
                               JOSEPH & KIRSCHENBAUM LLP


                               By: /s/ D. Maimon Kirschenbaum
                                   D. Maimon Kirschenbaum
                                   Michael DiGiulio
                                   45 Broadway, Suite 320
                                   New York, NY 10006
                                   Tel: (212) 688-5640
                                   Fax: (212) 981-9587

                                   *Attorneys for Named Plaintiff, proposed*
                                   *FLSA Collective Plaintiffs, and Proposed*
                                   *Class*

16

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.